UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

Lupton Consulting LLC, *et al.*,[1]          Case No. 20-27482-beh

Debtors in possession.          Chapter 11
Jointly Administered

## DECISION AND ORDER APPROVING FINAL FEE APPLICATION, IN PART

Counsel for two debtors that operate three fitness clubs and unsuccessfully sought confirmation of their combined Chapter 11 plan has filed its final application for fees and costs for work performed in these cases. After the Court denied confirmation of the debtors' plan, the debtors voluntarily requested their cases be dismissed. The Court granted the debtors' motion while counsel's application for compensation was pending.

The United States Trustee has objected to counsel's fee application, asserting that the fees and costs incurred did not benefit the debtors' estates. The U.S. Trustee also contends that the fees were not necessary to the administration of the cases, nor does the application comply with standards set forth in Bankr. E.D. Wis. Local Rule 2016.

After reviewing the applicable Code and Rule sections, the relevant caselaw, and the detail of invoices submitted, the Court will grant the fee application in part, in the amount of $44,614.58.

### JURISDICTION

Despite the dismissal of the debtors' cases, the Court maintains jurisdiction to examine counsel's fees and decide whether to award the requested compensation. A bankruptcy court has ancillary—or "clean-up"—jurisdiction to take care of "minor loose ends" remaining after a case has been

---

[1] Jointly administered with *In re Anytime Partners LLC*, Case No. 20-27483-beh.

dismissed, including the determination of fee-and-expense awards under 11 U.S.C. § 330(a)(1). *See In re Sweports, Ltd.*, 777 F.3d 364, 367 (7th Cir. 2015) (noting a "critical difference" between determining an entitlement to fees after dismissal—which falls within a bankruptcy court's ancillary jurisdiction—and ordering *payment* of those fees); *see also Dery v. Cumberland Cas. & Surety Co. (In re 5900 Assocs., Inc.)*, 468 F.3d 326, 330–31 (6th Cir. 2006) ("The Bankruptcy Code assigns to courts a comprehensive duty to review fees in a particular case, and 11 U.S.C. § 330 is the sole mechanism by which fees may be enforced. Dismissal of a case, or a private agreement between the debtor and its attorney, cannot abrogate the bankruptcy court's statutorily imposed duty of review."); *In re Petrovic*, 560 B.R. 312, 315 (Bankr. N.D. Ill. 2016) ("A bankruptcy court . . . has ancillary jurisdiction to examine the fees of counsel for a debtor under section 329 post-dismissal.") (citing cases).

## FACTUAL BACKGROUND

Debtor Lupton Consulting, LLC is a sole-member LLC owned and managed by Lawrence Lupton. Debtor Anytime Partners, LLC is owned 50% by Mr. Lupton, and 50% by Darren Enger; Mr. Lupton acts as its managing member. The debtors operate three Anytime Fitness gyms in the Milwaukee area: (1) the "Milwaukee Gym" (located at 6015 West Forest Home Avenue, Milwaukee, Wisconsin 53220); (2) the "West Allis Gym" (located at 2229 S. 108th Street, West Allis, Wisconsin 53227); and (3) the "Hartland Gym" (located at 520 Hartbrook Drive, Hartland, Wisconsin 53029). Mr. Lupton owns the franchises for each of the three gyms and operates and oversees them on a daily basis. Mr. Enger has not been involved in the day-to-day operation of any of the gyms since early 2020.

Each debtor filed a voluntary Chapter 11 petition on November 16, 2020. The next day, they both filed an application to employ Watton Law Group as bankruptcy counsel, as well as a motion seeking joint administration of their cases. The applications to employ Watton Law Group represented that "WLG has experience representing debtors and has familiarity with complex

reorganization cases," but did not detail any experience specifically in Chapter 11 cases. The applications also identified the range of hourly rates to be charged by the firm's professionals providing service and estimated its fees per category of service. In the affidavits filed in support of the applications, counsel disclosed that the firm had received $20,000 from the debtors for work performed up to the filing of the petition, which counsel had applied against prepetition fees ($13,283 due from Lupton Consulting and $3,283 due from Anytime Partners) and costs ($1,717 from each debtor for the Chapter 11 filing fee), leaving unpaid prepetition fees of $6,179.65.[2] Counsel also disclosed that the Watton firm had received $6,532 from Mr. Lupton in his individual capacity for prepetition work completed on Mr. Lupton's personal behalf. No one objected to the applications, and the Court approved the employment of Watton Law Group to represent the debtors in these cases under a general retainer on December 23, 2020. The Court granted the request for joint administration on December 29, 2020.

Within the first two weeks of filing their cases, the debtors sought and obtained interim authorization to use the cash collateral of Byline Bank (the largest secured creditor of each debtor) and the U.S. Small Business Administration. In December 2020, the debtors attended their 11 U.S.C. § 341 meeting of creditors, at which Mr. Lupton testified. Based on that testimony, as well as the U.S. Trustee's review of the debtors' pre- and post-petition bank records, the U.S. Trustee became concerned with the accuracy and completeness of disclosures and the commingling of the debtors' business expenses with the personal expenses of Mr. Lupton. When the debtors sought to obtain *final* authorization to use Byline's and the SBA's cash collateral, the U.S. Trustee objected, citing Mr. Lupton's testimony as well as information suggesting that the debtors had made post-petition credit card payments to

---

[2] There is a discrepancy between the fee applications' description of the amount paid pre-petition and the amount identified in each debtor's Form 2030 (Disclosure of Compensation of Attorney for Debtor(s)), the latter of which disclose that Lupton Consulting paid the firm $13,053 for legal services prepetition and Anytime Partners paid $3,260.

satisfy prepetition debt without Court approval and without disclosing the payments on their monthly operating reports. The Court adjourned the hearing so that the debtors could address the U.S. Trustee's concerns, ultimately granting the final cash collateral request, with conditions.

The U.S. Trustee later conducted a Rule 2004 examination of Mr. Lupton to inquire into prepetition transfers between the debtors and insiders. In March 2021, Lupton Consulting amended its Statement of Financial Affairs (SOFA) to disclose additional prepetition transfers made to or for the benefit of Mr. Lupton (SOFA questions 4 and 30).

The debtors requested several extensions of time to file their plan(s). These requests were based on efforts to reach agreement with Byline Bank about how the debtors would apply payments from the SBA. *See* ECF Nos. 77, 87, and 98. In their third request, the debtors advised that they and Byline

> have made a great deal of progress finalizing their agreement as to the treatment of Byline's various claims and the application of the three payments that have been made by the Small Business Administration ("SBA") already and those that the parties expect to be made in the next two months. The Debtors and Byline need additional time to finalize the terms of the Chapter 11 Plan so that it comports to the requirements of the Bankruptcy Code and existing SBA rules and guidance.

ECF No. 98, at 2–3.

On April 30, 2021, the debtors filed a single plan of reorganization; they filed a slightly revised version of that plan on May 13, 2021, which is the version the debtors sent to creditors for balloting. *See* ECF No. 110. The plan did not provide for the prepetition legal fees of debtors' counsel ($4,803.65 owed by Lupton Consulting, LLC, and $1,376 owed by Anytime Partners, LLC), or a claim filed by the Internal Revenue Service against Anytime Partners. A significant feature of the debtors' plan was Article 10, which included several injunctive provisions concerning certain debts guaranteed by non-debtor third parties.

Both the U.S. Trustee and Byline Bank objected to the injunctive relief provisions contained in Article 10 of the plan. Several other creditors consented to the injunctive provisions that affected their loans. The U.S. Trustee also objected to confirmation of the debtors' plan on grounds of feasibility and lack of good faith and questioned the reliability of the debtors' projections, as well as the necessity of some of the budgeted expenses. The lack of clear financial records permeated the plan deficits. Lack of records made it impossible to trace and verify substantial transfers between the debtors and Mr. Lupton.

Shortly after the two-part evidentiary hearing on confirmation, the Court received written oral argument from the parties, and later issued its decision sustaining the U.S. Trustee's and Byline's objections and denying confirmation of the debtors' plan. The Court concluded that denial was appropriate based on "multiple improper injunctive provisions that benefit insiders (and soon to be outsiders), vague and ultimately infeasible plan funding and distribution terms, and a lack of good faith" per 11 U.S.C. § 1129(a)(3). ECF No. 138, at 1.

Three weeks later, the debtors filed a motion for voluntary dismissal because the debtors "believe[d] that neither of them [wa]s able to propose a feasible plan that c[ould] be confirmed by the Court." ECF No. 140, at 2. They further asserted that dismissal of their cases "will benefit[] creditors and the estates because it will [] allow the Debtors to finalize agreements with their creditors and make payments without delay," and that "[d]ismissal of the cases preserves the value of the Debtors as going concerns if they are able to work out agreements with their creditors directly. This allows for the possibility of payment to all creditors, rather than just the secured creditors." *Id.* at 2–3. The debtors own little in the way of hard assets; their plan to pay creditors had depended on continuing to generate monthly membership dues and other fees for service.

While the motion to dismiss was pending, and apparently at the request of the U.S. Trustee, Watton Law Group filed an application for final compensation. The application sought approval of fees and expenses incurred from the petition date through dismissal, in a total amount of $46,644.58, as

follows: (1) $33,292 in compensation for services provided to Lupton Consulting; (2) $12,644 in compensation for services provided to Anytime Partners; (3) $397.63 in costs incurred on behalf of Lupton Consulting; and (4) $310.95 in costs incurred on behalf of Anytime Partners. All of the attorney work was performed by one attorney, at a billing rate of $290 per hour. Work performed by the firm's paralegals (who normally bill at rates of $150 or $160 per hour) was billed at no charge.[3]

## THE PARTIES' ARGUMENTS

The U.S. Trustee argues that Watton Law Group's request for compensation should be disallowed in its entirety, because counsel failed to demonstrate that its services were necessary or provided any benefit to the debtors' estates. Based on the amount of prepetition fees counsel disclosed having incurred (at least $22,400), and assuming that all prepetition work was performed by one attorney at a rate of $290 per hour, the U.S. Trustee calculates that Watton Law Group spent 77 hours preparing these cases before filing the petitions. The U.S. Trustee asserts:

> Given that WLG spent approximately 77 hours prepetition to prepare the Debtors' cases, including the schedules and statements which require disclosure of insider transactions, the firm's previous representation of Mr. Lupton, and the firm's assertion that it is experienced in "complex reorganization cases," such egregious omissions demonstrate WLG's prepetition services lacked significant benefit or value. WLG's failure to investigate the truthfulness of the Debtors' disclosures regarding insider transfers before filing sworn statements with the Court raises questions about the firm's diligence and thoroughness in other tasks and services performed in these cases.

ECF No. 152, at 6.

The U.S. Trustee adds that the amount of time counsel spent preparing the cases, as well as counsel's pre-existing relationship with Mr. Lupton,

---

[3] Even though this staff time was recorded but not charged, the U.S. Trustee lodged an objection to one such entry. *See* ECF No. 152-1, at 2, entry dated February 4, 2021. The Court regards this as a clerical error in the objection.

makes the fees incurred in addressing or correcting various deficiencies—including amending the SOFA to disclose insider transfers and Schedules E/F to disclose Watton Law Group as a creditor—unreasonable.

Finally, the U.S. Trustee asserts that the application fails to comply with Local Rule 2016 because it does not provide sufficient detail for each meeting, correspondence or conference, and generally does not identify the subject matter of the communication, nor does it provide sufficient detail with regard to document preparation and attendance at hearings. Although the U.S. Trustee contends that the application should be denied in its entirety for the foregoing reasons, he further objects to the allowance of specific billing entries, arguing that they are vague, contain "block-billing," reflect clerical work, or are for services to correct the firm's own errors.

In response, Watton Law Group disputes that its fees should be denied merely because the debtors were unsuccessful in obtaining confirmation of their plan. While conceding that debtors in the Seventh Circuit face a high hurdle in attempting to confirm a plan with third-party releases, counsel urges that the debtors here had a reasonable basis in law and fact to include such provisions, and that denying fees based on a results-oriented approach will have a chilling effect on the willingness of counsel to advocate difficult positions for debtors in the future. Counsel adds that, although the plan ultimately was unsuccessful, the debtors and counsel came to agreements with almost every creditor that included the release of personal guarantees.[4]

Counsel further asserts that the fees requested in its application already represent a reduction of the fees earned by its professionals, and that the billing rate of the attorney who provided services in these cases is below the market rate of other bankruptcy attorneys. In addition, while the debtors'

---

[4] At a post-dismissal hearing on the fee application, counsel represented that the time and "breathing room" afforded by the cases allowed the debtors to get their finances in order, and that the debtors are still operating and have come to agreements with several creditors (including some that had personal guarantees) since dismissal, including an agreement to satisfy a judgment lien held against Mr. Lupton personally. Because the debtors' estates ceased to exist after dismissal, such post-dismissal benefit did not inure to the debtors' estates.

primary attorney conceded that it was his first Chapter 11 case, his experience includes representing a debtor in a Chapter 12 case in which he had obtained plan confirmation.

## DISCUSSION

The Bankruptcy Code authorizes reasonable compensation for actual, necessary services rendered by an attorney or paraprofessional. 11 U.S.C. § 330(a)(1)(A). As the debtors and their counsel acknowledge, the Code requires that the Court satisfy itself, regardless of whether any party has lodged an objection, that compensation sought for work performed on behalf of the estate is reasonable. *In re Harry Viner, Inc.*, 520 B.R. 268, 274 (Bankr. W.D. Wis. 2014); 11 U.S.C. § 330. Thus, the Court would have conducted a careful review of the Watton firm's fee application in any case.

The standard for determining compensable attorney fees in bankruptcy cases is found in section 330 of the Code which provides in relevant part:

(a)(1) After notice . . . and a hearing, . . . the court may award to . . . a professional person employed under section 327 or 1103 –

(A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney, and by any paraprofessional persons employed by such person; and

(B) reimbursement for actual, necessary expenses.

(2) The court may, on its own motion or on the motion of the United States Trustee . . . or any other party in interest, award compensation that is less than the amount of compensation that is requested.

(3) In determining the amount of reasonable compensation to be awarded . . . the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a).

In addition, the Code expressly excludes from compensation services that are not "reasonably likely to benefit the debtor's estate" or "necessary to the administration of the case." 11 U.S.C. § 330(a)(4)(A). Counsel seeking fees under § 330(a) has the burden of showing entitlement to the fees requested. *In re Kenneth Leventhal & Co.,* 19 F.3d 1174, 1177 (7th Cir. 1994). Section 330(a) is "intended to allow lawyers and other professionals retained by the trustee [or the estate] to get compensation comparable to what they would receive in non-bankruptcy cases." *In re Taxman Clothing Co.,* 49 F.3d 310, 313 (7th Cir. 1995).

The procedure for obtaining an award of compensation is set out in Bankruptcy Rule 2016, which requires an entity seeking compensation for services or reimbursement of necessary expenses from the bankruptcy estate to file an application "setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." Fed. R. Bankr. P. 2016(a). This district has adopted Local Rule 2016, which requires applicants seeking compensation to disclose additional information to enable the Court to assess fee requests appropriately, including:

(1) A list of all attorneys, professionals, paraprofessionals or other timekeepers performing services on the case along with a description of the experience, length of professional practice, and billing rate for each.

(2) A chronological record of each timekeeper's time spent on the case that:

> (A) States the time spent on each service or task in tenths of an hour;
>
> (B) For each meeting, correspondence, or conference, identifies the subject matter and all parties with whom the timekeeper met or communicated; and
>
> (C) Describes each document prepared and each hearing or trial attended for which the applicant seeks compensation.

L.R. 2016(a).

## A.      Lack of Benefit to the Debtors' Estates

### 1.   Section 330(a)(4)(A)(ii)(I) – applicable standards

The thrust of the U.S. Trustee's objection is that no fees are warranted because counsel should have known from the outset that a plan dependent on third-party releases would not be confirmed—in other words, that counsel's services were "not reasonably likely to benefit the debtor[s'] estate[s]," and therefore expressly excluded from compensation under 11 U.S.C. § 330(a)(4)(A)(ii)(I).

A determination of whether services were reasonably likely to benefit a debtor's estate "must be based on the circumstances at the time the services were performed, and not simply in hindsight." *In re Gluth Bros. Const., Inc.*, 459 B.R. 351, 370 (Bankr. N.D. Ill. 2011) (citing *In re Taxman Clothing,* 49 F.3d at 315 (trustee's attorney should not be compensated for pursuing a preference claim "once it became reasonably obvious that further litigation would cost more than it was likely to bring into the estate")). "The fact that the Chapter 11 Plan was ultimately not confirmed does not, by itself, bar recovery of compensation for services performed in the Chapter 11 case." *In re Crown Oil, Inc.*, 257 B.R. 531, 541 (Bankr. D. Mont. 2000); *see also In re Jefsaba, Inc.*, 172 B.R. 786, 799 (Bankr. E.D. Pa. 1994) ("[W]e do not conclude that only successful actions may be compensated under § 330. To the contrary, so long as there was a reasonable chance of success which outweighed the cost in pursuing the action, the fees relating thereto are compensable. Moreover, professionals must often perform significant work in making the determination

whether a particular course of action could be successful. Such services are also compensable so long as, at the outset, it was not clear that success was remote.").

Legal services may be "reasonably likely" to benefit a Chapter 11 estate even if no plan of reorganization is confirmed (or even proposed) because "[b]enefit to the estate for services provided by counsel for a Chapter 11 debtor in possession is not restricted to success measured by confirmation of a plan or the prospect of confirming a plan," nor is benefit to the estate limited solely to an economic or monetary benefit. *In re Kitts Dev., LLC*, 474 B.R. 712, 721 (Bankr. D.N.M. 2012). For example, counsel's advice and services may benefit the estate "by maximizing value for creditors through an orderly or emergency liquidation of assets by Section 363 sales, even if the Chapter 11 case ultimately is converted or dismissed." *Id.* Courts also may allow compensation where counsel's services "promoted the bankruptcy process or administration of the estate in accordance with the practice and procedures provided under the Bankruptcy Code and Rules for the orderly and prompt disposition of bankruptcy cases and related adversary proceedings." *In re Spanjer Bros., Inc.*, 203 B.R. 85, 90 (Bankr. N.D. Ill. 1996). At the same time, however, when a successful reorganization is "more than doubtful," "a more thorough examination of the services provided is required . . . [because] counsel's efforts towards reorganization would be less likely to benefit the estate." *In re APW Enclosure Sys., Inc.*, No. 06-11378(MFW), 2007 WL 3112414, at *4 (Bankr. D. Del. Oct. 23, 2007); *see also Crown Oil*, 257 B.R. at 541 ("[W]hether a reorganization is successful is a factor to be considered in determining whether a debtor's counsel's services provide a benefit to the estate.").

Relatedly, services that are intended to benefit the debtor or the debtor's principals, but not the estate in a Chapter 11 case, are not compensable. *See, e.g., In re Kohl*, 95 F.3d 713, 714 (8th Cir. 1996) ("[A]n attorney fee application in bankruptcy will be denied to the extent the services rendered were for the benefit of the debtor and did not benefit the estate.'"); *In re Horizon Ridge Med.*

& *Corp. Ctr., LLC*, No. BAP NV-14-1532-DJUKI, 2016 WL 742716, at *7 (B.A.P. 9th Cir. Feb. 23, 2016) ("Some bankruptcy courts have denied compensation to attorneys for chapter 11 debtors based on a finding that the attorneys' services primarily benefitted debtors personally or their principals rather than the estate.") (citing cases). Merely doing a client's bidding is insufficient to justify an award of fees. *See In re Williams*, 378 B.R. 811, 827 (Bankr. E.D. Mich. 2007) ("Just because a client wants to embark on a course of action does not mean that the lawyer is obligated to assist the client in pursuing that course of action if it is inconsistent with the exercise of independent professional judgment by the lawyer. Nor does it mean that the fees incurred in pursuing that course of action must be allowed.") (citing *In re Saturley,* 131 B.R. 509, 521 (Bankr. D. Me. 1991) ("[F]utile efforts aimed at achieving unattainable objectives are unreasonable. Fees generated in tilting at windmills will be disallowed.")); *In re Berg*, 268 B.R. 250, 262 (Bankr. D. Mont. 2001) ("An attorney will encounter difficult cases and difficult clients, but as a professional, an attorney must instruct the debtor on appropriate conduct and must develop client control. To foster such client control, an attorney must be: knowledgeable about the law; willing to communicate promptly with the client about all matters associated with the client's case; instructive on what alternatives and remedies are available to the client; knowledgeable about the parameters and limits of available alternatives and remedies, and unwilling to allow a client to direct or dictate the progress or activity in a case, if such activity is inconsistent with the requirements of the law.").

 The U.S. Trustee acknowledges that compensation should not be denied under § 330(a)(4)(A) in hindsight solely because a Chapter 11 plan is not successful, asserting that courts instead should look to the deficiencies in contemporaneous efforts and strategy that resulted in the failure. *See* ECF No. 152, at 10–11 (citing *In re Vines, Inc.*, 159 B.R. 381, 381–82 (Bankr. D. Mass. 1993) (reducing requested compensation because "counsel invested many hours in attempting to reorganize the Debtor when, all the while, it was clear

the no reorganization was feasible. And, by blindly pushing the Debtor in the wrong direction, counsel worsened the position of the Debtor's creditors. . . . The deficiencies in counsel's strategy were all evident at the time. Counsel either was blind to them or chose to ignore them."); *In re Amstar Ambulance Serv., Inc.*, 120 B.R. 391, 396 (Bankr. N.D.W. Va. 1990) ("[A]bsent a compelling explanation, attorney fees incurred beyond the period where there is no likelihood of a successful reorganization will be denied. Any other result would penalize unsecured creditors at the sole benefit of the attorney, an outcome clearly inconsistent with the purposes of Chapter 11, which is to achieve the debtor's reorganization and to distribute a fair return to unsecured creditors.")).

## 2. Reasonable likelihood of benefit of third-party injunctions

According to the U.S. Trustee, the debtors' counsel should have known these cases were doomed to fail because the stated goal of the reorganization—to obtain (nonconsensual) releases of guaranties for Mr. Lupton and other insiders—was futile from the start. By itself, however, the debtors' choice to propose of a plan of reorganization containing third-party releases was not objectively unreasonable. Such releases are allowed in limited circumstances in the Seventh Circuit. *See Airadigm Commc'ns, Inc. v. FCC (In re Airadigm Commc'ns, Inc.),* 519 F.3d 640, 657 (7th Cir. 2008). *Compare In re Cmty. Home Fin. Servs., Inc.*, No. 1201703EE, 2015 WL 8113699, at *10 (Bankr. S.D. Miss. Dec. 7, 2015) (rejecting argument that debtor's counsel should not be compensated for work proposing a plan that was non-confirmable due to its inclusion of a provision releasing the personal guaranties of the debtor's president: "[T]here is no prohibition against the Debtor including such a provision in its plan—indeed, over the years, this Court has seen many similar provisions in Chapter 11 plans. The inclusion in the plan of the release of [the debtor's president's] guaranties was a *gamble,* which ultimately proved to be an unsuccessful gamble because Edwards objected to the provision.").

Nor is there any evidence that the debtors' counsel knew, or should have known, from the outset of these cases that the debtors would be unable to confirm, *under any circumstances*, a Chapter 11 plan that included third-party releases and injunctions. In December 2020, the debtors filed their joint § 1188(c) report, stating that the goal of their cases was "to restructure the secured debts under commercially reasonable terms and to allow sufficient cash flows to pay unsecured creditors amounts sufficient to remove the guarantees of the Debtors' members and their spouses so that the Debtors may continue to operate." ECF No. 43, at 2. At the related status conference held in January 2021, *see* 11 U.S.C. § 1188(a), counsel for the U.S. Trustee pointed out the high burden required to obtain such releases in the Seventh Circuit, and questioned whether the debtors had discussed this proposal with their creditors. The debtors' attorney replied that he had spoken with the debtors' two largest secured creditors, including Byline Bank, and believed there was some willingness on the part of both creditors to agree to releases in the right circumstances. Ultimately, the debtors and their counsel came to agreements that included the release of personal guaranties with a majority of the creditors holding guaranteed debts.

Finally, even after Byline Bank objected to the injunctive provisions in the debtors' plan, the plan's failure was not a foregone conclusion as a matter of law—the debtors could have obtained confirmation had they demonstrated that the releases were appropriately tailored and essential to the reorganization as a whole. *See Airadigm*, 519 F.3d at 657. The debtors failed to do so, and the plan could not be confirmed. But that does not mean that counsel's services in pursuing confirmation were not "reasonably likely to benefit the estate" at the time they were rendered. Indeed, the docket reflects serious effort to accommodate Byline's interests. *See, e.g.*, ECF Nos. 77, 87, and 98 (debtors' requests for additional time to submit a plan, based on their negotiations with Byline and efforts to obtain additional SBA funds and channel them correctly to Byline and unsecured creditors); ECF No. 145, at 11–16 (billing entries reflecting counsel's work negotiating with Byline's counsel, including a

discussion in January 2021 regarding the release of third-party guarantees). *Compare In re Horizon Ridge*, 2016 WL 742716, at *8 (although debtors' counsel billed "a large proportion of its fees in connection with its efforts to confirm a plan that ultimately was found to be unconfirmable and not proposed in good faith[,] . . . nothing in the record compelled the bankruptcy court to find that the project was hopeless or that [counsel]'s services were not reasonably likely to confer a benefit on the estate, whether in the form of a confirmable plan or a consensual resolution between" the debtor and its largest creditor).

### 3. Reasonable possibility of proposing feasible plan in good faith

The Court found the debtors' plan to be unconfirmable not only because of the nonconsensual third-party injunctions, but also based on lack of feasibility and good faith. In objecting to confirmation of the plan on these bases, the U.S. Trustee focused on unreliability of the debtors' financial projections and uncertain contribution by Mr. Enger (feasibility), and initially undisclosed insider transactions, as well as asserted excessive personal expenses of insiders (good faith).

While counsel did face some hurdles during the case attributable to the debtors' lack of clear financial records, these obstacles were not the type of red flags that should have put counsel on notice that a reorganization was not feasible from the start. For example, in *Crown Oil,* the debtor's counsel admitted in the early months of the case that the debtor's books and records were "atrocious" to the point of being useless, its operation was in "shambles," and shareholders were fighting and uncooperative; five months into the case, counsel conceded that the debtor's plan of reorganization could not be confirmed because it hinged on an increase in oil prices that had not materialized (and the plan also ignored other glaring problems and failed to set forth how creditors would be paid). *See* 257 B.R. at 539–40. The bankruptcy court concluded that counsel "knew or should have known early on in this case that reorganization was not feasible," and that counsel's services, which were

"grounded solely upon an ethereal increase in oil prices while ignoring other confirmation requirements, did not benefit the estate," and therefore reduced counsel's fees. *Id.*

Similarly, in *In re Berg*, the bankruptcy court reduced an attorney fee award after finding that counsel knew or should have known from the outset that reorganization was not possible in light of the debtor's history of losses, financial condition, and refusal to conform to his fiduciary duties as a debtor-in-possession—which should have prompted counsel to advise the debtor to consider an immediate liquidation of assets through a liquidating plan or a Chapter 7 conversion. 268 B.R. at 259. Instead, through counsel's "lack of professional control over their client," the debtor chose to proceed slowly under Chapter 11, resulting in huge losses to the estate. *Id.* The court concluded:

> Professionally, [the debtor's attorneys] knew or should have known from the beginning of this case that Debtor would be difficult to control and would be hesitant to relinquish control of his assets. Given such knowledge, no evidence exists that as a consequence of his attorneys' efforts and representation did Debtor promptly negotiate and formulate a liquidating plan or seek a Chapter 7 conversion that would benefit the creditors. In fact the contrary is proven, Debtor during the initial eight (8) months of the case continued to irresponsibly operate his businesses and manage his assets without adequately appreciating the responsibilities imposed by the Bankruptcy Code on a debtor-in-possession. Prior to the lapse of eight (8) months, [the debtor's attorneys] knew or should have known that this Debtor was incapable or unwilling to formulate and execute a liquidating plan of reorganization.

*Id.* at 259–60.

Here, it is apparent from docket filings and counsel invoices that counsel expended significant effort to assist the debtors in providing adequate financial records, designed at least in part to support feasibility. *See, e.g.*, ECF No. 145 (invoices showing at least $11,890—or 41 hours—in efforts to supply requested documents and to amend financial schedules between November 30, 2020 and

March 22, 2021).[5] After the evidentiary hearing on confirmation, the Court accepted several of the U.S. Trustee's arguments about the debtors' projections and ultimately concluded the combined plan was not feasible, even while considering the debtors' arguments about increasing membership revenue. The Court also recognized that "where the projections are credible, based upon the balancing of all testimony, evidence, and documentation, even if the projections are aggressive, the court may find the plan feasible. Debtors are not required to view business and economic prospects in the worst possible light." ECF No. 138, at 34 (citations omitted). The debtors may have been aggressive in their optimism, but the Court cannot conclude that counsel "should have known from the outset" that reorganization was unattainable from a purely economic standpoint.

Nor can the Court conclude that at a certain point counsel should have realized that the debtors' proposal was not in good faith, largely due to past and ongoing compensation of insiders. Courts make such determinations often as a matter of degree. In this instance, the facts did not show that the debtors were operating their business "irresponsibly," *compare Berg*, but ultimately the Court concluded that, among other things, the plan's financial deference to Lupton insiders, combined with the history of commingling of business and personal records, did not meet the threshold of good faith. The Court acknowledged the debtors' argument that they were operating two profitable gyms despite Mr. Lupton's poor record-keeping. But the lack of sufficient records, notwithstanding counsel's months-long efforts to provide adequate documents, made it impossible, in the Court's judgment, to verify that certain transfers could not be avoided. ECF No. 138, at 36. And the Court concluded that the evidence offered to justify proposed payments to Lupton insiders,

---

[5] As noted elsewhere in the record, the debtors' managing member had some conceptual difficulties, conflating the debtors' interests and his own. This misapprehension manifested in part through the original tangle of records. The Court is unwilling to conclude that counsel "lacked professional control over his client." *See Berg*, 268 B.R. at 259. Rather, it appears from the docket and invoice detail that counsel, concededly pursuing his first Chapter 11 case, had to work harder to educate the managing member about these distinctions and to disentangle and supply sufficient business records, including as part of the Rule 2004 examination,

whether for luxury vehicles or cell phones, or rate of wages/salary, was insufficient to avoid the taint of bad faith. *Id.* at 38–39. These conclusions are matters of degree, and the Court cannot say that counsel's efforts at the time to try to satisfy these concerns were not reasonably calculated to benefit the debtors' estates.

### 4. Intended benefit to debtors' principals versus estates

The U.S. Trustee makes a related argument that these cases were never intended to benefit the debtors' estates, or even the debtors, but instead the debtors' principals. If the goal of the reorganization was *really* to keep the LLCs running, says the U.S. Trustee, then, after the denial of confirmation, the debtors would have proposed an amended plan without the non-consensual release provisions. Nothing in the fee application reflects that the debtors considered that option—let alone any other alternative plan.[6]

The premise underlying the U.S. Trustee's argument here is that a plan without the third-party releases necessarily would have been designed to benefit the debtors' estates, while the one with the third-party releases was not. Given the debtors' stated need for the releases—to allow Mr. Lupton to focus on, successfully run, and grow the debtors' gyms—an amended plan like the one the U.S. Trustee proposes presumably would have required the debtors to hire additional staff to take over the role(s) previously filled by Mr. Lupton and his family. This business judgment alternative offered by the U.S. Trustee does not account for the possible intangible benefits the debtors considered in proposing to retain Mr. Lupton based on his years of experience managing the debtors' various gyms in multiple capacities.

It also does not follow that, because the debtors ultimately opted to dismiss their cases rather than to file an amended plan without the releases,

---

[6] The billing statements likewise do not disclose expressly any research into the standards to obtain confirmation of a plan with a nonconsensual release in the Seventh Circuit. According to the debtors' attorney, time spent on such research is subsumed in larger time entries (e.g., "plan preparation"), but counsel acknowledged that the description of such time entries could have been more detailed. The Court encourages counsel to provide more detailed time descriptions in the future.

all work performed in furtherance of the first plan was intended primarily for the benefit of Mr. Lupton or was not likely to benefit the debtors' estates. According to the debtors' attorney, because Mr. Lupton personally holds the debtors' franchise agreements, Lupton could have closed the debtor LLCs and opened new companies; instead, he undertook efforts to repay creditors, including merging two other related entities with Lupton Consulting prepetition. And during this case, the debtors were able to reach agreements with several of their creditors allowing for consensual third-party releases. They tried (unsuccessfully) to negotiate the same treatment with Byline Bank over the course of several months, and even after the Court denied confirmation of their plan, the debtors' counsel continued to discuss options with Byline. *See* ECF No. 145, at 11 (invoice reflecting a September 2021 conversation with Byline's counsel "regarding various possibilities with Byline Bank in and out of bankruptcy"). Accepting the debtors' representations that dismissal of the cases would allow them to remain in business, finalize agreements with creditors and begin making prompt payments, it cannot be said that counsel's work was not likely to be of any value to the debtors' estates when performed.

In addition, whether counsel intended to further the interests of Mr. Lupton in pursuing the third-party releases in the plan is not dispositive; the more relevant question is whether Mr. Lupton's interests diverged with those of the debtors to the point of creating a conflict of interest. *See, e.g., In re Kendavis Indus. Int'l, Inc.*, 91 B.R. 742, 752 (Bankr. N.D. Tex. 1988) ("The activities of [debtor's counsel] best served the principals of the [debtor], primarily the Davis family. [Counsel]'s actions in this case were designed to further the interests of their primary client, the Davis family. Therefore, serious conflict of interest problems arise, and questions as to the benefit of [counsel]'s service to the estate are apparent. . . . [Counsel]'s actions attempting to benefit the Davis family at the expense of the estates fit the definition of a conflict of interest."); *In re Digerati Techs., Inc.*, 537 B.R. 317, 344–45, 361–62 (Bankr. S.D. Tex. 2015), *aff'd sub nom. Herrera v. Dishon*, No. 4:15-CV-227, 2016 WL

7337577 (S.D. Tex. Dec. 16, 2016), *aff'd sub nom. Matter of Digerati Techs., Inc.*, 710 F. App'x 634 (5th Cir. 2018) (disallowing 10% of fees incurred in drafting a plan that counsel should have known would draw vigorous objection as being for work not reasonably likely to benefit the estate under § 330(a), and further reducing the total amount allowed because counsel "slavishly" looked out for the interests of two of the debtor's officers to the detriment of the estate; counsel ceased to be "disinterested" by prosecuting an "unrealistic, arrogant plan" that proposed to keep the two officers as the sole officers and directors of the debtor with absurdly excessive compensation packages, and was "patently unconfirmable"); *see also In re Granite Sheet Metal Works, Inc.*, 159 B.R. 840, 848 (Bankr. S.D. Ill. 1993) (denying compensation and ordering counsel to disgorge unapplied retainer due to conflict of interest under section 328(c) and failure to disclose the same under Rule 2014(a); counsel had represented the debtor's principal prepetition and chose to place his economic well-being above that of the debtor's estate and its unsecured creditors, including by opposing a salary reduction for the debtor's principal and proposing generous terms for the repayment of his loan from the debtor; counsel also failed to insist that the debtor fulfill its obligation to investigate potential claims for the recovery of assets from insiders—the principal's brothers—which "placed the law firm in a position adverse to the interests of the estate"). [7]

On this record, the Court cannot conclude that the debtors' pursuit of third-party releases for the benefit of Mr. Lupton came at the expense of the debtors' estates and their creditors. Although Mr. Lupton at times failed to appreciate the distinction between his interests and the interests of the debtor LLCs—and therefore inappropriately conflated the two—there is no evidence that Mr. Lupton's and the debtors' interests were not, in fact, generally aligned. For example, it is not evident that the debtors' estates would have achieved a significantly greater benefit, economic or otherwise, by hiring other employees

---

[7] The U.S. Trustee does not expressly argue that the Watton Law Group held an interest adverse to the estate or was not "disinterested" within the meaning of 11 U.S.C. § 327, which could warrant denial of the requested compensation under 11 U.S.C. § 328(c).

and obviating the purported need for the third-party releases, rather than maintaining Mr. Lupton's employment on the terms disclosed in the debtors' joint plan. Nor does counsel's prepetition work on behalf of Mr. Lupton, personally, mandate a finding that counsel's true client in these cases was Mr. Lupton, or that counsel elevated Mr. Lupton's interests above those of the debtors.

### 5. Additional considerations

Other circumstances weigh against reducing or denying Watton Law Group's compensation award due to the outcome of these cases. First, because the cases have been dismissed, counsel is not seeking to be compensated from the debtors' estates (which no longer exist), so "[t]he underlying rationale for disallowing fees that do not provide a benefit to the estate because of the 'unfairness of allowing the debtor to deplete the estate by pursuing its interests to the detriment of creditors' is not unduly frustrated." *In re Kitts Dev., LLC*, 474 B.R. at 725 (quoting *Crown Oil,* 257 B.R. at 540). Second, courts have recognized that "if compensation were routinely disallowed when a debtor's reorganization efforts are unsuccessful, it 'would create a chilling effect on the willingness of counsel to undertake the representation of debtors in financial distress and would likely deny access to the court to many deserving debtors.'" *Id.* (quoting *In re Coastal Nursing Center, Inc.,* 162 B.R. 918, 919 (Bankr. S.D.Ga. 1993)); *see also In re Polanco*, 626 B.R. 12, 23 (Bankr. E.D.N.Y. 2021) (considering whether the services rendered were reasonably likely to benefit the estate from the perspective of the time when such services were rendered "supports the salutary objective that attorneys should not be deterred from undertaking the representation of debtors in bankruptcy cases, including cases that may pose significant challenges and an uncertain outcome, due to a risk of inadequate compensation") (internal quotation marks omitted); *cf. In re Amstar Ambulance Serv., Inc.,* 120 B.R. at 393 (". . . [The debtor's counsel] has raised the issue that denial of fees in an unsuccessful Chapter 11 case may have a chilling effect on future counsels' decision to represent a debtor in a

marginal case due to the fear that if the case is unsuccessful, attorneys will not be compensated for legal services provided. The Court genuinely appreciates the seriousness of this problem, yet at the same time, strongly believes that there must be limitations on the accrual of attorneys' fees by a Chapter 11 debtor which has no colorable chance of achieving an effective reorganization.").

While the U.S. Trustee notes that the debtors' counsel has not had prior experience handling Chapter 11 cases, "every Chapter 11 lawyer of course must have a 'first case.'" *In re Ryan 1000, LLC*, 631 B.R. 722, 739 (Bankr. E.D. Wis. 2021). At the point of employing such counsel, one court has noted that "'[o]ne of the most efficient methods for determining whether an attorney has competence to be appointed Chapter 11 counsel is to look at the attorney's performance in previous cases.'" *Id.* at 739 (quoting *In re Vettori*, 217 B.R. 242, 245 (Bankr. N.D. Ill. 1998) (citing *In re Slack*, 73 B.R. 382, 386–88 (Bankr. W.D. Mo. 1987) (denying application to employ Chapter 12 counsel, based on counsel's conduct in other cases, including numerous failures and unfavorable consequences for his clients))). Here, the U.S. Trustee did not object to counsel's employment, *see* ECF No. 37, and not only does counsel have prior success in obtaining confirmation of a client's Chapter 12 plan, but the Court can take judicial notice of its docket to consider that he has worked as debtors' counsel in dozens if not hundreds of consumer cases over the last eight years, and the U.S. Trustee had not pointed to the kind of deficits noted in *Vettori* that militated against employment.

In sum, the Court cannot make the broad finding that counsel's services, as described in the billing records attached to the application for compensation, were not reasonably likely to benefit the debtors' estates at the time the services were rendered. Such fees therefore are not subject to denial under 11 U.S.C. § 330(a)(4)(A). This leaves the Court to consider the U.S. Trustee's remaining arguments as to the compensability of discrete entries in

the billing statements on the bases of block billing, clerical tasks, and vague entries.[8]

## B.    Block Billing

A time entry that combines multiple tasks or services into one charge—commonly referred to as "block billing" or "lumping"—can prevent the Court from determining whether time spent on each task was reasonable or necessary. *In re Harry Viner*, 520 B.R. at 275. Yet sometimes block entries are practical and cost-effective, particularly where the lumped tasks relate to each other and may each be of very short duration. *Id.* at 276, 281. For example, while the U.S. Trustee objects to the 1.0 hour entry on August 23, 2021 that recites the tasks billed as "[r]eviewed and revised July Monthly Operating Report and attachments; telephone call and email with Lawrence Lupton to finalize Monthly Operating Report" as lumping, the Court considers the described review and client conversation plainly to be related. In contrast, there were several entries where two or more tasks were combined, and the Court's determination of reasonableness would have benefitted from isolating each task. For example, on February 18, 2021, a 3.7-hour entry reads: "Reviewed and uploaded documents to United States Trustee; Drafted and emailed explanatory letter to Attorney Steele." In those instances the Court has made a partial disallowance.

Services marked with an "B" on the attachment are partially disallowed due to the blocked or lumped service descriptions, and total $609.00.

## C.    Clerical Tasks

Clerical tasks, whether performed by a lawyer or staff person, are charged to overhead and are not separately compensable. *In re C2R Global Mfg. Inc.*, 611 B.R. 313, 317 (Bankr. E.D. Wis. 2019) (approving counsel's reduction of fees for itemized clerical tasks such as uploading, downloading, filing and

---

[8] The U.S. Trustee's Exhibit 1, attached to his objection, includes a category of "no explanation of benefit to the estate."  The Court combines that category with the U.S. Trustee's objections based on vagueness.

effective of service of documents). When a party, like the U.S. Trustee here, objects to a time entry as clerical, for example "[e]mail with Attorney Steele regarding insurance declaration pages," the Court is willing to consider the entry as clerical because the objecting party was the recipient, and the inference—not contradicted by further clarification from the debtor's counsel—is that the email was simply a conveyance, not a substantive communication. Entries for clerical tasks such as uploading, downloading, filing and calls to schedule hearings will be reduced by .1 for each such task.[9]

Other considerations include that some accommodation has to be made for the fact that these two cases were counsel's (and perhaps his firm's) first Chapter 11 case. So even though the U.S. Trustee objects to a time entry such as "[d]rafted Tabulation and Summary of Ballots" as clerical, and on occasion simple math could be deemed a clerical exercise, the Court accepts that lawyer oversight on these required duties for Chapter 11 debtors renders this entry not uncompensably clerical. A similar entry to which the U.S. Trustee objected as clerical, "[c]onference with O. Murphy [a paralegal] regarding mailing of plan, ballots and scheduling order on all creditors," for .5 hours, likewise will be accepted as lawyer oversight for a necessary task. Notably, the paralegal's own efforts in this instance were not billed. The U.S. Trustee objects to entries dated June 20, 2021 and October 1, 6 and 7, 2021, regarding preparation of the fee application as either "vague," "lumping," or "clerical," but lawyer time for fee applications is compensable, *Baker Botts L.L.P. v. Asarco LLC*, 576 U.S. 121, 131–32 (2015) (explaining that 11 U.S.C. § 330(a)(6), which specifies that "[a]ny compensation awarded for the preparation of a fee application shall be based on the level and skill reasonably required to prepare the application" is best viewed as a service rendered to the estate under § 330(a)(1), and distinguishing the application preparation from the noncompensable defense of

---

[9] Although the debtors' attorney explained at the hearing on the fee application that he did not bill for time spent filing documents and included the task in the billing entry descriptions in part as a reminder that he had filed a document, he conceded that he could have done a better job of reflecting that in the task narratives, such as by reflecting the time spent on the task as .0, or "no charge."

such an application). One entry dated October 7, 2021, for "Review [Subchapter V] Trustee's Fee Application" likewise is allowed, as debtors' counsel still represented the estates and the cases had not yet been dismissed.

Services marked with a "C" on the attachment are disallowed as noncompensable clerical tasks that should be included in overhead, and total 3.4 hours or $986.00.

## D. Vague Entries

As already described, part of counsel's burden in seeking allowance of fees is the responsibility to include sufficient detail to enable the Court to make an informed judgment about the reasonableness of the fees sought, and necessity and benefit of the work performed. *In re Harry Viner*, 520 B.R. at 275. In attempting to determine whether discrete services were of benefit to the estate and not redundant, the Court starts with the premise that any communication between a debtor or a debtor's principals and the debtor's counsel is for the benefit of the estate, unless there is a clear inference that the communication was for another, non-estate purpose. The same premise applies to time entries describing communication between counsel for the debtor and counsel for creditors.[10] In some instances, the U.S. Trustee has characterized time entries as "vague/no explanation of benefit," but the Court's understanding of such entries, in relation to other adjacent time entries and in the context of proximate docket entries,[11] will suffice to provide clarity for the related entries. *See, e.g., In re Asarco LLC,* No. 05-21207, 2011 WL 2974957 (Bankr. S.D. Tex. July 20, 2011), *aff'd in part, rev'd in part sub nom. ASARCO LLC v. Baker Botts, L.L.P. (In re ASARCO LLC)*, 477 B.R. 661 (S.D. Tex. 2012),

---

[10] In taking this approach, the Court is mindful of the caution expressed by other courts weighing fee applications. *See, e.g., In re Spanjer Bros.*, 203 B.R. at 92 (disallowing compensation for various phone calls and conferences with insiders and agents of the debtors because, while they may have provided some benefit to various parties, there was inadequate and insufficient information to summarily conclude that merely because they were performed there was a benefit to the estate).

[11] *See*, for example, ECF No. 152-1, at 1, which challenges entries from June 22, 2021 and June 23, 2021 that are both related to preparing a response to the U.S. Trustee's objection to confirmation.

*rev'd on other grounds*, 576 U.S. 121 (2015). The *Asarco* bankruptcy court explained, "Courts have recognized that a billing entry that could be considered vague if read in isolation, may not be vague when viewed in the context of the surrounding work performed." 2011 WL 2974957, at *25 (citations omitted). *See also* ECF No. 152, at 5-6; ECF No. 152-1, at 1 (entries for February 18, 23, 25, 2021 and March 5, 2021), and footnote 5, *supra,* regarding compensability of counsel's efforts helping debtors' managing member to prepare for and respond to Rule 2004 request. *See also* ECF No. 152-1, at 2–4 (entries for January 9 and 10, 2021, related to the cash collateral hearing), and *id.* at 1 (the June 22 and 23, 2021 entries, related to the recently-filed objections to confirmation). But bare billing entries, such as "telephone call" or "conference," unaccompanied by any context or explanation for the time entry, normally prevent the Court from determining compensability. *See Harry Viner*, 520 B.R. at 275. For example, the Court will disallow entries for September 27 and 28, 2021, "Telephone call with Attorney Steele regarding email; Telephone call with Attorney Stele regarding various items." Overall, the Court appreciates that counsel for debtors "must balance the requirements of providing sufficient detail to enable the court and parties to be reasonably informed about the services performed against the cost and efficiency of separating every single task no matter how small the time or how related the entries may be to one another." *Id.* at 276. But some entries just need more.

Services marked with a "V" on the attachment are disallowed as noncompensable due to the vagueness of the task description, and total 1.5 hours, or $435.00.

## CONCLUSION AND ORDER

As the Court noted when denying confirmation of the debtors' plan, pre-petition obligations such as personal guarantees given to multiple creditors, plus a lack of clear record-keeping for the LLC entities and some blurring of the lines between the debtors and their non-debtor managing member, can make it difficult to craft a feasible, Code-compliant plan of reorganization. But those

difficulties do not mean necessarily that all work performed by the debtors' counsel was not reasonably likely to benefit the debtors' estates at the time the services were performed. Discrete service descriptions that are block-billed, reflect clerical tasks, or are so vague that the Court cannot properly assess the benefit and reasonableness of the services, will be disallowed, at least in part. The disallowed amounts total $2,030.00 (7 hours), of which the Court will apportion 70% to debtor Lupton Consulting, LLC, and 30% to debtor Anytime Partners, LLC.

For the foregoing reasons,

IT IS HEREBY ORDERED that Watton Law Group's request for final award of compensation is granted in part. The Court awards Watton Law Group fees in the reduced amount of **$43,906.00** ($31,871.00 due from Lupton Consulting, LLC, and $12,035.00 due from Anytime Partners, LLC) and expenses in the amount of **$708.58** ($397.63 due from Lupton Consulting, LLC, and $310.95 due from Anytime Partners, LLC), for a total of **$44,614.58,** under 11 U.S.C. § 330(a)(1).

Dated: March 22, 2022

By the Court:

Beth E. Hanan
United States Bankruptcy Judge

| Date | Initials | Debtor | Notes | Total Time | LC | AP | Rate | Amount Billed LC | Amount Billed AP | Project Code | United States Trustee Objection |
|------|----------|--------|-------|-----------|----|----|------|-----------------|-----------------|-------------|-------------------------------|
| 10/7/2021 | KMF | LC AP | Review Trustee's Fee Application | 0.2 | 0.1 | 0.1 | $ 290.00 | $ 29.00 | $ 29.00 | 10 | Clerical |
| 9/28/2021 | KMF | LC AP | Telephone call with Attorney Steele regarding various items. | 0.2 | 0.1 | 0.1 | $ 290.00 | $ 29.00 | $ 29.00 | 10 | Vague |
| 09/27/2021 | KMF | LC AP | Telephone call with Attorney Steele regarding email. | 0.1 | 0.1 | 0.0 | $ 290.00 | $ 29.00 | $ - | 10 | Vague |
| 09/08/2021 | KMF | LC AP | Telephone call with Attorney Steele regarding Debtors' intentions moving forward and various other items. | 0.1 | 0.1 | 0.0 | $ 290.00 | $ 29.00 | $ - | 10 | No explanation of benefit |
| 08/23/2021 | KMF | LC AP | Reviewed and revised July Monthly Operating Report and attachments; Telephone call and email with Lawrence Lupton to finalize Monthly Operating Report. Efiled with court. | 1.0 | 0.6 | 0.4 | $ 290.00 | $ 174.00 | $ 116.00 | 10 | Lumping/vague/clerical |
| 07/21/2021 | KMF | LC AP | Reviewed and revised June Monthly Operating Report and attachments; Telephone call and email with Lawrence to finalize Monthly Operating Report. Efiled with court. | 1.5 | 1.0 | 0.5 | $ 290.00 | $ 290.00 | $ 145.00 | 10 | Lumping/vague/clerical |
| 07/19/2021 | KMF | LC AP | Email with Attorney Steele and United States Trustee Office regarding various documents. | 0.2 | 0.1 | 0.1 | $ 290.00 | $ 29.00 | $ 29.00 | 10 | Vague/clerical |
| 07/07/2021 | KMF | LC AP | Email with Attorney Steele re case administration. | 0.1 | 0.1 | 0.0 | $ 290.00 | $ 29.00 | $ - | 10 | Vague |
| 06/23/2021 | KMF | LC AP | Telephone call with Trustee regarding confirmation. | 0.5 | 0.3 | 0.2 | $ 290.00 | $ 87.00 | $ 58.00 | 10 | Vague/No explanation of benefit |
| 06/22/2021 | KMF | LC AP | Reviewed and revised May Monthly Operating Report and attachments; email with Lawrence Lupton to finalize Monthly Operating Report. | 2.0 | 1.3 | 0.7 | $ 290.00 | $ 377.00 | $ 203.00 | 10 | Vague |
| 06/22/2021 | KMF | LC AP | Email with Trustee regarding recommendation. | 0.4 | 0.2 | 0.2 | $ 290.00 | $ 58.00 | $ 58.00 | 10 | Vague/No explanation of benefit |
| 03/24/2021 | KMF | LC | Preparation for and appearance at Adjourned 2004 Examination with Lawrence Lupton and Attorney Steele. | 1.9 | 1.9 | 0.0 | $ 290.00 | $ 551.00 | $ - | 10 | Vague |
| 03/16/2021 | KMF | LC | Email with Attorney Steele regarding request to adjourn the 2004 Examination. Forwarded additional documents and detailed explanation and responses. | 0.8 | 0.8 | 0.0 | $ 290.00 | $ 232.00 | $ - | 10 | Lumping/Clerical/Vague |
| 03/05/2021 | KMF | LC | Uploaded additional documents to the United States Trustee; Email with Attorney Steele same. | 0.8 | 0.8 | 0.0 | $ 290.00 | $ 232.00 | $ - | 10 | Clerical/lumping |
| 02/25/2021 | KMF | LC | Meeting with Lawrence regarding preparation for 2004 examination and to review examination documents. Attend 2004 Examination. | 3.3 | 3.3 | 0.0 | $ 290.00 | $ 957.00 | $ - | 10 | No explanation of benefit |
| 02/24/2021 | KMF | LC AP | Reviewed and revised January Monthly Operating Report and attachments; Telephone call and email with Lawrence to finalize Monthly Operating Report. | 4.0 | 2.5 | 1.5 | $ 290.00 | $ 725.00 | $ 435.00 | 10 | Vague |
| 02/23/2021 | KMF | LC | Reviewed and upload additional documents to United States Trustee; Email with Attorney Steele regarding the same. | 1.0 | 1.0 | 0.0 | $ 290.00 | $ 290.00 | $ - | 10 | Vague |
| 02/18/2021 | KMF | LC | Reviewed and uploaded documents to United States Trustee; Drafted and emailed explanatory letter to Attorney Steele. | 3.7 | 3.7 | 0.0 | $ 290.00 | $ 1,073.00 | $ - | 10 | Lumping/Clerical |
| 02/15/2021 | JLR | LC AP | Reviewed bank statements. | 1.0 | 1.0 | | $ - | No Charge | No Charge | 10 | NA |
| 01/21/2021 | KMF | LC AP | Telephone calls and emails with Lawrence Lupton regarding finalizing amended November Monthly Operating Reports and to update and finalize the December Monthly Operating Reports. | 5.0 | 3.0 | 2.0 | $ 290.00 | $ 870.00 | $ 580.00 | 10 | Lumping/Clerical |
| 01/20/2021 | KMF | LC AP | Review and revised amended November Monthly Operating Reports and attachments; Telephone call and email with Lawrence regarding the same. | 2.5 | 1.5 | 1.0 | $ 290.00 | $ 435.00 | $ 290.00 | 10 | Clerical/lumping |
| 01/20/2021 | KMF | LC AP | Preparation with Lawrence for and appearance at Adjourned Meeting of Creditors Hearing. | 2.7 | 1.7 | 1.0 | $ 290.00 | $ 493.00 | $ 290.00 | 10 | Lumping |
| 01/19/2021 | KMF | LC | Email with Attorney Steele regarding documents provided and additional documents being requested. Review and uploaded additional documents to United States Trustee. Email with United States Trustee's Office regarding the same. | 2.7 | 2.7 | 0.0 | $ 290.00 | $ 783.00 | $ - | 10 | Lumping/Clerical |

| Date | Initials | Code | Description | Hours | Hours | Hours | Rate | Amount | Amount | # | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 01/18/2021 | KMF | LC | Reviewed records requested by United States Trustee. Uploaded documents to United States Trustee website. | 3.0 | 3.0 | 0.0 | $ 290.00 | $ 870.00 | $ - | 10 | Lumping/Clerical |
| 01/13/2021 | KMF | LC | Received email from Attorney Steele regarding requested documents. Email with Lawrence regarding the same. | 0.3 | 0.3 | 0.0 | $ 290.00 | $ 87.00 | $ - | 10 | Vague/Clerical |
| 01/10/2021 | KMF | LC AP | Telephone call with Attorney Steele regarding various matters. | 0.5 | 0.3 | 0.2 | $ 290.00 | $ 87.00 | $ 58.00 | 10 | Vague |
| 01/10/2021 | KMF | LC | Multiple emails with Lawrence regarding requested documents. Reviewed additional documents for United States Trustee. | 1.5 | 1.5 | 0.0 | $ 290.00 | $ 435.00 | $ - | 10 | Vague/lumping/clerical |
| 01/09/2021 | KMF | LC | Multiple telephone calls and emails with Lawrence regarding requested documents from United States Trustee. Review of documents. | 4.5 | 4.5 | 0.0 | $ 290.00 | $ 1,305.00 | $ - | 10 | Vague/lumping/clerical |
| 01/06/2021 | KMF | LC | Preparation for and appearance at Adjourned Meeting of Creditors Hearing; conference with Lawrence afterward. | 2.6 | 1.5 | 1.1 | $ 290.00 | $ 435.00 | $ 319.00 | 10 | Lumping |
| 12/30/2020 | KMF | LC AP | Email with Attorney Steele regarding insurance declaration pages. | 0.2 | 0.1 | 0.1 | $ 290.00 | $ 29.00 | $ 29.00 | 10 | Clerical |
| 12/29/2020 | KMF | LC AP | Email with Attorney Steele regarding insurance documents. | 0.2 | 0.1 | 0.1 | $ 290.00 | $ 29.00 | $ 29.00 | 10 | Clerical |
| 12/22/2020 | KMF | LC AP | Email with Attorney Steele regarding insurance documents. | 0.2 | 0.1 | 0.1 | $ 290.00 | $ 29.00 | $ 29.00 | 10 | Clerical |
| 12/22/2020 | KMF | LC AP | Review of and upload documents to United States Trustee website. Email with Attorney Steele regarding the same. | 0.8 | 0.4 | 0.4 | $ 290.00 | $ 116.00 | $ 116.00 | 10 | Clerical/Lumping |
| 12/18/2020 | KMF | LC AP | Email with Attorney Steele regarding requested documents. | 0.1 | 0.1 | 0.0 | $ 290.00 | $ 29.00 | $ - | 10 | Lumping/duplication of services on 7/1; no such expert report filed. |
| 12/17/2020 | KMF | LC AP | Meeting with Lawrence regarding Meeting of Creditors Hearing. Preparation for and appearance at Meeting of Creditors Hearing. | 3.0 | 1.5 | 1.5 | $ 290.00 | $ 435.00 | $ 435.00 | 10 | Lumping/Vague |
| 11/30/2020 | KMF | LC AP | Telephone call with Vince from United States Trustee's Office regarding document portal. Email with United States Trustee's Office regarding documents and explanations. | 0.7 | 0.4 | 0.3 | $ 290.00 | $ 116.00 | $ 87.00 | 10 | Lumping/Clerical |
| 11/23/2020 | KMF | LC AP | Attend Initial Debtors Interviews with Lawrence Lupton. Preparation for and appearance at Initial Debtor Interview. | 2.0 | 1.0 | 1.0 | $ 290.00 | $ 290.00 | $ 290.00 | 10 | Lumping/Vague |
| 03/22/2021 | KMF | LC | Reviewed amended Statement of Financial Affairs with Lawrence Lupton; Received and efiled signed statement. | 0.5 | 0.5 | 0.0 | $ 290.00 | $ 145.00 | $ - | 11 | Lumping/Clerical |
| 03/08/2021 | KMF | LC | Reviewed documents. Telephone call with Lawrence regarding preparation for amended Statement of Financial Affairs. | 4.0 | 4.0 | 0.0 | $ 290.00 | $ 1,160.00 | $ - | 11 | Vague/Lumping/clerical |
| 02/04/2021 | JLR | LC | Prepared and efiled Declaration, Amended Schedules D & H and Matrix. | 0.1 | 0.1 | 0.0 | $ - | No Charge | No Charge | 11 | Vague/lumping/clerical |
| 02/03/2021 | KMF | LC | Telephone call with Lawrence to review Amended Schedules. | 0.1 | 0.1 | 0.0 | $ 290.00 | $ 29.00 | $ - | 11 | Clerical/Vague |
| 1/26/2021 | KMF | LC AP | Review amended schedules with Lawrence | 0.2 | 0.1 | 0.1 | $ 290.00 | $ 29.00 | $ 29.00 | 11 | Clerical/vague |
| 12/29/2020 | JLR | LC AP | Received Order on Motion to Use Cash Collateral. Prepared and efiled Preconference Report. | 0.2 | 0.1 | 0.1 | $ - | No Charge | No Charge | 11 | NA |
| 11/21/2020 | KMF | LC AP | Finalized and efiled Balance Sheets, Cash Flow Summary, Profit/Loss along with taxes. | 1.0 | 0.5 | 0.5 | $ 290.00 | $ 145.00 | $ 145.00 | 11 | Lumping/ Vague/clerical |
| 11/16/2020 | KMF | LC AP | Filed cases with court. | 0.2 | 0.1 | 0.1 | $ 290.00 | $ 29.00 | $ 29.00 | 11 | Clerical |
| 08/12/2021 | KMF | LC AP | Email with Lawrence Lupton regarding insurance and personal property taxes for Geneva's collateral. | 0.1 | 0.1 | 0.0 | $ 290.00 | $ 29.00 | $ - | 12 | Clerical |
| 03/01/2021 | KMF | LC AP | Email with Attorney Belike regarding proof of adequate protection payment and personal financial statements for Lawrence and Darren. | 0.1 | 0.1 | 0.0 | $ 290.00 | $ 29.00 | $ - | 12 | Clerical |
| 02/25/2021 | KMF | LC AP | Telephone call with Attorney Belike regarding valuation of Geneva's collateral and adequate protection. | 0.3 | 0.1 | 0.1 | $ 290.00 | $ 58.00 | $ 29.00 | 12 | No explanation of benefit |
| 02/05/2021 | KMF | LC AP | Email with Attorney Belike regarding valuation of collateral for Geneva's loan and adequate protection. | 0.2 | 0.1 | 0.1 | $ 290.00 | $ 29.00 | $ 29.00 | 12 | No explanation of benefit |

| Date | | | Description | | | | | | | | Comment |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 02/05/2021 | KMF | LC AP | Telephone call with Attorney Habeck regarding SBA guidance on payments. | 0.4 | 0.2 | 0.2 | $ 290.00 | $ 58.00 | $ 58.00 | 12 | No explanation of benefit |
| 02/03/2021 | KMF | LC AP | Telephone call with Attorney Belike regarding valuation of collateral of Geneva's loan and adequate protection. | 0.4 | 0.2 | 0.2 | $ 290.00 | $ 58.00 | $ 58.00 | 12 | No explanation of benefit |
| 01/26/2021 | KMF | LC AP | Telephone call with Attorney Belike regarding treatment of Geneva Capital and adequate protection. | 0.5 | 0.2 | 0.3 | $ 290.00 | $ 58.00 | $ 87.00 | 12 | No explanation of benefit |
| 01/21/2021 | KMF | LC AP | Telephone call with Attorney Habeck regarding adequate protection payments by Debtors to qualify for SBA payments on behalf of Debtors. | 0.5 | 0.3 | 0.2 | $ 290.00 | $ 87.00 | $ 58.00 | 12 | No explanation of benefit |
| 01/19/2021 | KMF | LC AP | Email with Attorney Habeck regarding SBA payments. | 0.3 | 0.2 | 0.1 | $ 290.00 | $ 58.00 | $ 29.00 | 12 | No explanation of benefit |
| 01/18/2021 | KMF | LC AP | Email with Attorney Habeck regarding various issues related to PPP loans and application of SBA payments. | 0.2 | 0.1 | 0.1 | $ 290.00 | $ 29.00 | $ 29.00 | 12 | No explanation of benefit |
| 01/16/2021 | KMF | LC AP | Email with Attorney Habeck regarding various issues related to PPP loans. | 0.2 | 0.1 | 0.1 | $ 290.00 | $ 29.00 | $ 29.00 | 12 | No explanation of benefit |
| 01/10/2021 | KMF | LC AP | Telephone call with Attorney Habeck regarding cash collateral. | 0.2 | 0.1 | 0.1 | $ 290.00 | $ 29.00 | $ 29.00 | 12 | No explanation of benefit |
| 01/10/2021 | KMF | LC AP | Telephone call with Attorney Gingerman regarding treatment of Geneva Capital and adequate protection. | 0.3 | 0.2 | 0.1 | $ 290.00 | $ 58.00 | $ 29.00 | 12 | No explanation of benefit |
| 01/10/2021 | KMF | LC AP | Updated cash collateral budgets. Efiled with court. | 1.0 | 0.5 | 0.5 | $ 290.00 | $ 145.00 | $ 145.00 | 12 | Lumping/Vague/Clerical |
| 09/16/2021 | KMF | LC AP | Telephone call with Attorney Habeck regarding various possibilities with Byline Bank in and out of bankruptcy. | 0.2 | 0.1 | 0.1 | $ 290.00 | $ 29.00 | $ 29.00 | 13 | No explanation of benefit |
| 09/16/2021 | KMF | LC | Telephone call with Attorney Holzapfel regarding Lupton Consulting, LLC's intentions with the West Allis Gym. | 0.2 | 0.2 | 0.0 | $ 290.00 | $ 58.00 | $ - | 13 | No explanation of benefit |
| 08/31/2021 | KMF | LC AP | Review Order Denying Confirmation. | 0.5 | 0.3 | 0.2 | $ 290.00 | $ 87.00 | $ 58.00 | 13 | No explanation of benefit |
| 07/30/2021 | KMF | LC AP | Finalized closing arguments and brief. Efiled with court. | 5.0 | 4.0 | 1.0 | $ 290.00 | $ 1,160.00 | $ 290.00 | 13 | Lumping/clerical/Block billing |
| 07/27/2021 | KMF | LC AP | Continue drafting of closing arguments and brief. | 3.0 | 2.4 | 0.6 | $ 290.00 | $ 696.00 | $ 174.00 | 13 | No explanation of benefit/Block billing /Vague |
| 07/26/2021 | KMF | LC AP | Began drafting brief and closing arguments. | 2.0 | 1.6 | 0.4 | $ 290.00 | $ 464.00 | $ 116.00 | 13 | No explanation of benefit/Block billing/Vague |
| 07/20/2021 | KMF | LC AP | Preparation for and appearance at Confirmation Hearing. | 3.5 | 2.8 | 0.7 | $ 290.00 | $ 812.00 | $ 203.00 | 13 | Block billing/Vague |
| 07/07/2021 | KMF | LC AP | Appearance at Confirmation Hearing. | 4.0 | 3.2 | 0.8 | $ 290.00 | $ 928.00 | $ 232.00 | 13 | No explanation of benefit |
| 07/05/2021 | KMF | LC AP | Preparation for Confirmation Hearing. | 1.0 | 0.8 | 0.2 | $ 290.00 | $ 232.00 | $ 58.00 | 13 | Vague |
| 07/01/2021 | KMF | LC AP | Trial preparation; finalize witness list, exhibit list, and exhibits. Drafted shell of Witness and Expert report. | 1.5 | 1.2 | 0.3 | $ 290.00 | $ 348.00 | $ 87.00 | 13 | Lumping/vague/ no such expert report was required |
| 07/01/2021 | JLR | LC AP | Prepared shell of Witness and Expert report. | 0.2 | 0.1 | 0.1 | $ - | No Charge | No Charge | 13 | NA |
| 06/20/2021 | KMF | LC AP | Drafted Tabulation and Summary of Ballots. | 0.5 | 0.3 | 0.2 | $ 290.00 | $ 87.00 | $ 58.00 | 13 | Clerical |
| 06/20/2021 | KMF | LC AP | Drafted response to United States Trustee Office Objection to Plan and Byline's Limited Objection. | 5.0 | 4.0 | 1.0 | $ 290.00 | $ 1,160.00 | $ 290.00 | 13 | Block billing |
| 06/17/2021 | KMF | LC AP | Reviewed United States Trustee's Objection to Plan and Byline Bank's Limited Objection to Plan. Review relevant case law. | 1.2 | 0.9 | 0.3 | $ 290.00 | $ 261.00 | $ 87.00 | 13 | Clerical/Vague |
| 05/25/2021 | KMF | LC AP | Telephone call with Attorney Habeck about Plan. | 0.2 | 0.1 | 0.1 | $ 290.00 | $ 29.00 | $ 29.00 | 13 | Vague |
| 05/17/2021 | KMF | LC AP | Reviewed Certificate of Service for Plan, Ballots, and Order. | 0.2 | 0.1 | 0.1 | $ 290.00 | $ 29.00 | $ 29.00 | 13 | Vague/Lumping/Clerical |
| 05/14/2021 | KMF | LC AP | Conference with O. Murphy regarding mailing of plan, ballots, and scheduling order on all creditors. | 0.5 | 0.3 | 0.2 | $ 290.00 | $ 87.00 | $ 58.00 | 13 | Clerical |
| 05/13/2021 | KMF | LC AP | Updated plan and efiled with court; drafted and efiled withdrawal of previous plan; drafted and efiled proposed ballots. | 1.0 | 0.8 | 0.2 | $ 290.00 | $ 232.00 | $ 58.00 | 13 | Clerical |
| 05/11/2021 | KMF | LC AP | Email with Attorney Belike regarding calculation of interest on secured portion of Geneva's claim and other items. | 0.3 | 0.1 | 0.2 | $ 290.00 | $ 29.00 | $ 58.00 | 13 | Vague |

Ⓒ .1

Ⓒ .1

Ⓑ .3

Ⓒ .2

| Date | Atty | Task | Description | | | | Rate | Amount | | Code | Objection |
|------|------|------|-------------|--|--|--|------|--------|--|------|-----------|
| 04/30/2021 | KMF | LC AP | Finalized plan and efiled with court. | 8.0 | 6.4 | 1.6 | $ 290.00 | $ 1,856.00 | $ 464.00 | 13 | Clerical |
| 04/30/2021 | KMF | AP | Email with Attorney Carrig regarding revision to lease with DHCH and treatment in plan. | 0.4 | 0.0 | 0.4 | $ 290.00 | $ - | $ 116.00 | 13 | No explanation of benefit |
| 04/30/2021 | KMF | LC AP | Email and telephone call with Attorney Habeck regarding proposed treatment of Byline in Plan. | 0.2 | 0.1 | 0.1 | $ 290.00 | $ 29.00 | $ 29.00 | 13 | Lumping |
| 04/29/2021 | KMF | AP | Telephone call and email with Attorney Carrig regarding revision to lease with DHCH. | 0.5 | 0.0 | 0.5 | $ 290.00 | $ - | $ 145.00 | 13 | Lumping |
| 04/29/2021 | KMF | LC AP | Continuance work on plan. | 3.5 | 2.8 | 0.7 | $ 290.00 | $ 812.00 | $ 203.00 | 13 | Vague/Block billing |
| 04/26/2021 | KMF | LC AP | Telephone call with Attorney Beilke regarding finalizing agreement of Geneva's claims through plan. | 0.4 | 0.3 | 0.1 | $ 290.00 | $ 87.00 | $ 29.00 | 13 | No explanation of benefit |
| 04/21/2021 | KMF | AP | Telephone call with Attorney Owens and Attorney Stueckroth regarding treatment of David Taylor Fitness and Fitness Ventures Proof of Claims. | 0.4 | 0.0 | 0.4 | $ 290.00 | $ - | $ 116.00 | 13 | No explanation of benefit |
| 03/30/2021 | KMF | AP | Reviewed lease terms and status with DCHC; Telephone call with Attorney Carrig regarding modification of lease and treatment in plan. Emailed information and proposal to Attorney Carrig. | 1.0 | 0.0 | 1.0 | $ 290.00 | $ - | $ 290.00 | 13 | No explanation of benefit |
| 03/01/2021 | KMF | LC AP | Telephone call with Attorney Habeck regarding treatment of Byline in Plan and payments by SBA. | 0.3 | 0.2 | 0.1 | $ 290.00 | $ 58.00 | $ 29.00 | 13 | No explanation of benefit |
| 02/17/2021 | KMF | AP | Multiple telephone calls with Attorney Carrig regarding lease for Anytime Partners. | 0.2 | 0.0 | 0.2 | $ 290.00 | $ - | $ 58.00 | 13 | No explanation of benefit |
| 02/16/2021 | KMF | AP | Telephone call with Attorney Carrig regarding lease for Anytime Partners. | 0.1 | 0.0 | 0.1 | $ 290.00 | $ - | $ 29.00 | 13 | No explanation of benefit |
| 02/15/2021 | KMF | LC AP | Telephone call with Attorney Beilke regarding Geneva's treatment. | 0.2 | 0.1 | 0.1 | $ 290.00 | $ 29.00 | $ 29.00 | 13 | No explanation of benefit |
| 02/15/2021 | KMF | LC AP | Telephone call with Attorney Habeck regarding proposed treatment of Byline and extension of time file Plan. | 0.3 | 0.2 | 0.1 | $ 290.00 | $ 58.00 | $ 29.00 | 13 | No explanation of benefit |
| 02/14/2021 | KMF | LC AP | Continuance work on Plan. | 5.0 | 4.0 | 1.0 | $ 290.00 | $ 1,160.00 | $ 290.00 | 13 | Vague/Block billing |
| 02/13/2021 | KMF | LC AP | Began drafting Plan. | 2.5 | 2.0 | 0.5 | $ 290.00 | $ 580.00 | $ 145.00 | 13 | Vague/Block billing |
| 02/12/2021 | KMF | AP | Telephone call with Attorney Dagan regarding treatment of Big Hand's Proof of Claim. | 0.4 | 0.0 | 0.4 | $ 290.00 | $ - | $ 116.00 | 13 | No explanation of benefit |
| 02/12/2021 | KMF | LC | Telephone call with Attorney David regarding agreement on treatment of Cream City's Proof of Claim. | 0.1 | 0.1 | 0.0 | $ 290.00 | $ 29.00 | $ - | 13 | No explanation of benefit |
| 02/11/2021 | KMF | LC | Telephone call with Attorney Karlin regarding treatment of BRE/Brixmore's Proof of Claim. | 0.4 | 0.4 | 0.0 | $ 290.00 | $ 116.00 | $ - | 13 | No explanation of benefit |
| 02/10/2021 | KMF | LC | Telephone call with Attorney David regarding treatment of Cream City's Proof of Claim. | 0.1 | 0.1 | 0.0 | $ 290.00 | $ 29.00 | $ - | 13 | No explanation of benefit |
| 02/09/2021 | KMF | LC | Telephone call with Attorney Kronis regarding sale of location of the Brookfield Gym. | 0.3 | 0.3 | 0.0 | $ 290.00 | $ 87.00 | $ - | 13 | No explanation of benefit |
| 02/03/2021 | KMF | LC AP | Telephone call with Lawrence regarding the Geneva and Cream City. | 0.3 | 0.1 | 0.2 | $ 290.00 | $ 29.00 | $ 58.00 | 13 | Vague |
| 02/03/2021 | KMF | LC | Telephone call and email with Attorney David regarding Cream City's treatment through plan; pending lawsuit; and sale of building. | 0.2 | 0.2 | 0.0 | $ 290.00 | $ 58.00 | $ - | 13 | No explanation of benefit |
| 01/05/2021 | KMF | LC AP | Telephone call with Attorney Habeck regarding proposed treatment in plan and releases of guarantees. | 0.5 | 0.3 | 0.2 | $ 290.00 | $ 87.00 | $ 58.00 | 13 | No explanation of benefit |
| 12/30/2020 | KMF | LC | Telephone call with Attorney Larry Glusman regarding the plan and Notice of Appearance. | 0.1 | 0.1 | 0.0 | $ 290.00 | $ 29.00 | $ - | 13 | No explanation of benefit |
| 12/22/2020 | KMF | LC AP | Email with Attorney Habeck regarding treatment of Byline. | 0.3 | 0.2 | 0.1 | $ 290.00 | $ 58.00 | $ 29.00 | 13 | No explanation of benefit |
| 12/22/2020 | KMF | LC AP | Email with Attorney Zimmerman regarding treatment of Geneva Capital. | 0.3 | 0.2 | 0.1 | $ 290.00 | $ 58.00 | $ 29.00 | 13 | No explanation of benefit |
| 09/21/2021 | KMF | LC AP | Telephone call with Lawrence Lupton regarding August Monthly Operating Report and dismissal of cases. [0.2] Drafted Motion and Notice to Voluntarily Dismiss both cases. [3.5] Telephone call with Judge Hanan's chambers regarding hearing date. [0.0] Efiled Motion and | 3.7 | 1.9 | 1.8 | $ 290.00 | $ 551.00 | $ 522.00 | 14 | Clerical/Vague |
| 07/16/2021 | KMF | LC AP | Telephone call with Lawrence Lupton and Darren Enger regarding appearances at continued hearing. | 0.5 | 0.3 | 0.2 | $ 290.00 | $ 87.00 | $ 58.00 | 14 | Clerical/Vague |
| 06/29/2021 | KMF | LC AP | Preparation for and appearance at final pretrial conference. | 0.3 | 0.2 | 0.1 | $ 290.00 | $ 58.00 | $ 29.00 | 14 | Lumping |
| 05/19/2021 | JLR | LC AP | Calendared remaining deadlines per Scheduling Order. | 0.3 | 0.2 | 0.1 | $ - | No Charge | No Charge | 14 | NA |

| Date | Atty | | Description | | | | | | | | | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 05/14/2021 | JLR | LC AP | Reviewed Scheduling Order. Calendared deadlines. | 0.3 | 0.2 | 0.1 | $ - | No Charge | No Charge | 14 | NA |
| 05/12/2021 | KMF | LC AP | Reviewed Scheduling Order. | 0.2 | 0.1 | 0.1 | $ 290.00 | $ 29.00 | $ 29.00 | 14 | Clerical |
| 05/12/2021 | KMF | LC AP | Preparation for Scheduling Conference and attend at Scheduling Conference on Plan Confirmation and Related Deadlines. | 0.6 | 0.3 | 0.3 | $ 290.00 | $ 87.00 | $ 87.00 | 14 | Lumping |
| 04/16/2021 | JLR | LC AP | Reviewed case. Prepared and efiled proposed order granting Motion to Extend. | 0.3 | 0.2 | 0.1 | $ - | No Charge | No Charge | 14 | NA |
| 4/1/2021 | JLR | LC AP | Prepared and efiled 3rd Notice, Motion and COS to Extend Deadline to File Plan. | 0.2 | 0.1 | 0.1 | $ - | No Charge | No Charge | 14 | NA |
| 4/1/2021 | KMF | LC AP | Drafted 3rd Notice, Motion and COS to Extend Deadline to File Plan. | 0.3 | 0.2 | 0.1 | $ 290.00 | $ 58.00 | $ 29.00 | 14 | Clerical |
| 03/18/2021 | JLR | LC AP | Reviewed case. Prepared and efiled proposed order granting Motion to Extend. | 0.3 | 0.2 | 0.1 | $ - | No Charge | No Charge | 14 | NA |
| 03/03/2021 | OFM | | Prepared Certificate of Serivce for 2nd Motion to Extend Deadline | 0.1 | 0.1 | 0.0 | $ - | No Charge | No Charge | 14 | NA |
| 03/02/2021 | KMF | LC AP | Drafted Notice and 2nd Motion to Extend Deadline to file plan. Telephone call with Attorney Habeck and Trustee regarding the same. | 0.8 | 0.4 | 0.4 | $ 290.00 | $ 116.00 | $ 116.00 | 14 | Vague/Clerical/lumping |
| 02/24/2021 | KMF | LC | Reviewed United States Trustee's Motion to Compel. | 0.3 | 0.3 | 0.0 | $ 290.00 | $ 87.00 | $ - | 14 | Clerical |
| 02/16/2021 | ! JLR | LC AP | Prepared and efiled Notice, Motion and COS to Extend Deadline to File Plan. | 0.2 | 0.1 | 0.1 | $ - | No Charge | No Charge | 14 | NA |
| 02/16/2021 | KMF | LC AP | Telephone call with Trustee regarding status of plan and motion to extend deadline to file plan. | 0.1 | 0.1 | 0.0 | $ 290.00 | $ 29.00 | $ - | 14 | Clerical |
| 02/16/2021 | KMF | LC | Reviewed United States Trustee's Motion for 2004 Exam; Drafted and efiled limited objection to motion. | 4.1 | 4.1 | 0.0 | $ 290.00 | $ 1,189.00 | $ - | 14 | Vague/Lumping/Clerical/Block billing |
| 02/15/2021 | KMF | LC AP | Drafted Notice and Motion to Extend time to file plan. | 0.8 | 0.4 | 0.4 | $ 290.00 | $ 116.00 | $ 116.00 | 14 | Vague/Lumping/Clerical |
| 01/29/2021 | JLR | LC AP | Prepared proposed order regarding final hearing on motion for authorization to use cash collateral and grant adequate protection. | 0.1 | 0.1 | 0.0 | $ - | No Charge | No Charge | 14 | NA |
| 01/28/2021 | KMF | LC AP | Preparation with Lawrence for and appearance at Hearing on final use of cash collateral. Discussion with Lawrence regarding outcome of hearing. | 1.3 | 0.7 | 0.6 | $ 290.00 | $ 203.00 | $ 174.00 | 14 | Lumping |
| 01/10/2021 | KMF | LC AP | Preparation with Lawrence for and appearance at Status Conference and Final Use of Cash Collateral Hearing. | 1.1 | 0.6 | 0.5 | $ 290.00 | $ 174.00 | $ 145.00 | 14 | Vague/Lumping/clerical |
| 01/10/2021 | KMF | LC AP | Review of United States Trustee limited objection to final use of cash collateral. | 0.5 | 0.3 | 0.2 | $ 290.00 | $ 87.00 | $ 58.00 | 14 | Clerical |
| 12/22/2020 | KMF | LC AP | Drafted Rule 1188 Pretrial Report | 1.3 | 0.7 | 0.6 | $ 290.00 | $ 203.00 | $ 174.00 | 14 | Vague |
| 12/20/2020 | KMF | LC AP | Drafted proposed orders from first day motions. | 2.5 | 1.3 | 1.2 | $ 290.00 | $ 377.00 | $ 348.00 | 14 | Clerical/vague/block billing |
| 11/24/2020 | KMF | LC AP | Preparation for and appearance at Hearing on Motions for Adequate Protection and Limit Notice regarding Motion for Joint Administration, Motion to Use Case Collateral, & Motion for Adequate Protection. | 0.5 | 0.3 | 0.2 | $ 290.00 | $ 87.00 | $ 58.00 | 14 | Vague/Lumping/clerical |
| 11/18/2020 | AEH | LC AP | Prepared and efiled Notice of Appearance. Multiple telephone calls with chambers regarding Notice of Appearance that was filed. Discussion with Attorney Kirk Fedewa regarding the same. | 0.5 | 0.3 | 0.2 | $ - | No Charge | No Charge | 14 | NA |
| 11/17/2020 | KMF | LC AP | Finalized and efiled first day motions. Telephone call with clerk's office regarding filing support documents. | 1.0 | 0.5 | 0.5 | $ 290.00 | $ 145.00 | $ 145.00 | 14 | Lumping/Clerical |
| 10/7/2021 | KMF | LC AP | Finalize Fee Application; phone conference with Lawrence regarding same. | 1.0 | 0.5 | 0.5 | $ 290.00 | $ 145.00 | $ 145.00 | 15 | Vague/lumping |
| 10/6/2021 | KMF | LC AP | Make final edits to time slips for Fee Application | 2.0 | 1.0 | 1.0 | $ 290.00 | $ 290.00 | $ 290.00 | 15 | Clerical |
| 10/4/2021 | AKB | LC AP | Review time slips for Fee Application | 6.0 | 3.0 | 3.0 | $ - | No Charge | No Charge | 15 | NA |

Handwritten annotations in right margin: C.2, B.2, C.1, B.2 C.1, B.2, B.1, C.2

| Date | | | Description | | | | Rate | Amount | | | | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/1/2021 | KMF | LC AP | Begin draft of Fee Application. | 1.0 | 0.5 | 0.5 | $ 290.00 | $ 145.00 | $ 145.00 | | 15 | Vague/Lumping/clerical |
| 10/1/2021 | KMF | LC AP | Email correspondence with Attorney Steele regarding fee application. | 0.1 | 0.1 | 0.0 | $ 290.00 | $ 29.00 | $ - | | 15 | Vague/clerical |
| 06/20/2021 | KMF | LC AP | Drafted Estimated Attorney Fees. | 0.5 | 0.3 | 0.2 | $ 290.00 | $ 87.00 | $ 58.00 | | 15 | Clerical |
| 05/18/2021 | KMF | LC | Received and reviewed Amended Proof of Claim filed by the Internal Revenue Service. | 0.2 | 0.2 | 0.0 | $ 290.00 | $ 58.00 | $ - | | 16 | Clerical |
| 05/15/2021 | KMF | LC AP | Reviewed Proof of Claims filed by the Internal Revenue Service. Email with Lawrence regarding same. | 0.3 | 0.2 | 0.1 | $ 290.00 | $ 58.00 | $ 29.00 | | 16 | Vague/clerical |
| 05/13/2021 | OFM | LC AP | Received Proof of Claims filed by the Internal Revenue Service. | 0.1 | 0.1 | 0.0 | $ - | No Charge | No Charge | | 16 | NA |
| 09/28/2021 | KMF | LC AP | Email with Lawrence Lupton regarding August Monthly Operating Report; Telephone call with Lawrence Lupton regarding the same. | 0.2 | 0.1 | 0.1 | $ 290.00 | $ 29.00 | $ 29.00 | | 17 | Clerical/lumping |
| 09/16/2021 | KMF | LC AP | Telephone call with Lawrence Lupton regarding Byline Bank and Baseline. | 0.2 | 0.1 | 0.1 | $ 290.00 | $ 29.00 | $ 29.00 | | 17 | Vague |
| 09/02/2021 | KMF | LC AP | Telephone call with Lawrence Lupton regarding case administration. | 0.2 | 0.1 | 0.1 | $ 290.00 | $ 29.00 | $ 29.00 | | 17 | Vague |
| 09/01/2021 | KMF | LC AP | Telephone call with Lawrence Lupton regarding Order and case administration. | 0.3 | 0.2 | 0.1 | $ 290.00 | $ 58.00 | $ 29.00 | | 17 | Vague |
| 07/19/2021 | KMF | LC AP | Telepone call with Darren Enger regarding Confirmation Hearing. | 0.2 | 0.1 | 0.1 | $ 290.00 | $ 29.00 | $ 29.00 | | 17 | Vague |
| 07/13/2021 | KMF | LC AP | Telephone call with Lawrence Lupton regarding appearance at continued hearing. | 0.2 | 0.1 | 0.1 | $ 290.00 | $ 29.00 | $ 29.00 | | 17 | Vague |
| 07/06/2021 | KMF | LC AP | Prepare for Confirmation Hearing: Meeting with Lawrence Lupton to prepare for testimony; Telephone call with Darren Enger regarding preparation for testimony. | 5.0 | 4.0 | 1.0 | $ 290.00 | $ 1,160.00 | $ 290.00 | | 17 | Lumping/vague |
| 07/02/2021 | KMF | LC AP | Multiple telephone calls with Lawrence Lupton and Darren Enger regarding Confirmation Hearing. | 0.5 | 0.4 | 0.1 | $ 290.00 | $ 116.00 | $ 29.00 | | 17 | Lumping/vague |
| 06/18/2021 | KMF | LC AP | Telephone call with Lawrence Lupton and Darren Enger regarding objections and response. | 0.5 | 0.4 | 0.1 | $ 290.00 | $ 116.00 | $ 29.00 | | 17 | Vague |
| 05/25/2021 | KMF | LC AP | Telephone call with Darren Enger regarding Plan status. | 0.4 | 0.2 | 0.2 | $ 290.00 | $ 58.00 | $ 58.00 | | 17 | Vague |
| 03/24/2021 | KMF | LC | Meeting with Lawrence Lupton. Preparation for examination and case administration. | 0.5 | 0.6 | 0.0 | $ 290.00 | $ 174.00 | $ - | | 17 | Vague/lumping |
| 03/03/2021 | KMF | LC AP | Telephone call with Lawrence regarding status of case and additional documents. | 0.5 | 0.4 | 0.1 | $ 290.00 | $ 116.00 | $ 29.00 | | 17 | Vague/Lumping/clerical |
| 03/01/2021 | KMF | LC AP | Telephone call with Lawrence to discuss extension of time to file plan. | 0.2 | 0.1 | 0.1 | $ 290.00 | $ 29.00 | $ 29.00 | | 17 | Vague/clerical |
| 02/22/2021 | KMF | LC AP | Telephone call with Lawrence regarding case administration. | 0.3 | 0.2 | 0.1 | $ 290.00 | $ 58.00 | $ 29.00 | | 17 | Vague |
| 02/17/2021 | KMF | LC AP | Telephone call with Lawrence and Darren regarding status of case. | 0.5 | 0.3 | 0.2 | $ 290.00 | $ 87.00 | $ 58.00 | | 17 | Vague |
| 02/15/2021 | KMF | LC AP | Telephone call with Lawrence and Darren regarding status of plan and negotiations with Byline, Big Hand, and David Taylor/Venture Fitness. | 1.1 | 0.2 | 0.9 | $ 290.00 | $ 58.00 | $ 261.00 | | 17 | Vague |
| 02/12/2021 | KMF | LC AP | Telephone call with Lawrence and Darren regarding status of negotiations and case. | 1.3 | 0.7 | 0.6 | $ 290.00 | $ 203.00 | $ 174.00 | | 17 | Vague |
| 12/22/2020 | KMF | LC AP | Multiple telephone calls with Lawrence regarding case administration. | 0.4 | 0.2 | 0.2 | $ 290.00 | $ 58.00 | $ 58.00 | | 17 | Vague/lumping |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | **Total Attorney Fees:** | **168.1** | **120.6** | **47.5** | | **$ 33,263.00** | **$ 12,615.00** | | | |